The first argued case this morning is number 2012-7028, Henderson v. Department of Veterans Defense. Mr. Walsh. Robert Walsh, Jr. Thank you, Your Honor. I'm Robert Walsh. Mr. Henderson and his wife are not here today. They were in Los Angeles when their first case was argued, but he is very seriously ill. I came into this case February 2nd, 2001, and the issue that I was retained to resolve was this third degree or full thickness burn of the right hand. Since that time, and at that time, Mr. Henderson, I think, was receiving 10 percent for a scar to that right hand. And as of the present, he's 90 percent back to May of 2001, and he receives unemployability. But we still have that zone from 1951 to 2001 that is still of concern. The government, I believe, argued that there was a collateral estoppel issue here because these claims were adjudicated in multiple years, in fact, multiple decades. Well, and I think we provided the authority to say that the collateral estoppel is not applicable here. And is collateral estoppel really in keeping with an ex parte and claimant friendly system? Well, if an issue was raised that should have been raised, that's not inconsistent with a claimant friendly system. A claimant friendly system doesn't mean you can raise the same claims again and again. Correct. Well, Your Honor, here in their brief on page 3, the Secretary admits that there's a third degree burn. The board admitted to that when we went up on our cue motion in 2004. They said, oh yeah, there's a third degree burn. Well, a third degree burn is a medical term of art. And when you cross that line from second degree burn, where your skin just blisters off and then comes back like a real bad sunburn, and you go into the world of you've actually burned away the flesh, and you're going to now have this scarring material, you totally derange the nervous system and the blood flow and everything in this hand. And that was the point. So collateral estoppel, here we have the Secretary conceding the third degree burn. If this was normal litigation, there'd be a 56 motion because they conceded the singular fact in this whole 60 year ordeal. So collateral estoppel was raised in another case recently, and I had the same response. I thought that in that case also it was not appropriate, and I don't think it lies here. We did go on and do some further development. Are there any facts questions which raise the question about jurisdiction? What he had Well... That's the biggest hang up. Yes, absolutely. In veterans cases. Absolutely. Or this court. And I think we briefed it well, and jurisdiction is always an issue. I was at the court conference a few days ago, and there was some discussion that this court should be eliminated from the review of veterans cases. My comment in rebuttal to that was that they should have full review, but that's for Congress. That's not for us today. But I believe we have jurisdiction, and certainly in the due process claim, I feel we're on all fours with Cushman. The only difference between Cushman is that here the records weren't destroyed or altered. They've been right there in plain view since this litigation began in 1959. And the secretary and his predecessors have chosen to ignore them. And Q is fact, or at least application of law to fact. Well, right, and of course as was discussed here with Judge Garza and Manzo, with counsel for the secretary, Q is not something that this court really can review. I mean, those determinations are outside of the purview. But this is a due process argument. In other words, what was the, before the Veterans Judicial Review Act, what remedy, what tools did this seriously burned veteran have in his toolbox? What could he do except keep coming back again and again? Now, once the court was created, and certainly after you've had counsel and you've had a swing at the ball, remember that until I came into the case and they came to the court the first time, the Hendersons had never had access to the record. So they had never seen the record in this case. So when we went to the physicians and had them review the record, that was the first opportunity private practitioners had had to actually look at the record. Now, the jurisprudence has shifted a little bit recently, and there have been some cases that have said that, you know, the private practitioners don't have to review the record. But at that time, to compete with a VA medical opinion, the only way you could compete was you had to be able to say that you had fully reviewed the service records and the medical records in the case. So the development of this case really commences, you know, in 2001, and we've made great progress. But the frustrating thing is even though we have the secretary admitting that the man burned his hand and confessing to that, they don't craft a remedy for this family. You know, they don't say, well, you know, now that we know that, let's go back in the interest of fairness and justice, let's go back and correct our mistake. And they seem unable to do that. But in any case, I feel that it's so egregious what this man has been put through that it does rise to the level of a due process violation. And again, the only thing that distinguishes it from Mr. Cushman is that the records were here right in plain sight, and they clearly indicated this man had a third degree burn. That's a total different adjudication. That's a total different aspect where you go into the internal derangement of his hand, and the VA, you know, has refused to do this, even after all this time. He's still only rated 90% in spite of all of the work we've done in the case. So what is the error that you're attributing to the Court of Appeals for Veterans Claims, that they didn't send it back to the BVA for further findings? You know, my comment, you know, to the court was, well, how can you ever have a BVA finding that is erroneous and permissible? You know, the language of the Secretary's brief is that, you know, they made a permissible finding under 7104. How can you make a permissible finding under 7104, which is absolutely contrary to medical science and contrary to the record, to the fact? But we can't review that so-called erroneous, alleged erroneous finding, can we? Nope. So if the court can craft a remedy for Mr. Henderson and his family, it seems to me that it's this due process violation. And, you know, I was over on the Hill a couple weeks ago and talking to the Senate committee, and we're talking about this backlog, and we talked about this Detroit office that Mr. Henderson comes out of. And Detroit has worked diligently to get that 900,000 claim backlog over the years, I'll tell you. You know, it wasn't easy. But this is a very frustrating case. I work on this case, I have an almost visceral reaction to it. And this man has been long-suffering. He's a patriot. He's a great American. He's been stoic in the face of all this and never become bitter. And he kept his family together, and five kids through college, one through trade school. He's just a great American. And it's a troubling case to me. How do you craft a remedy in these situations? And this court has been very reluctant to say that it's been a due process violation. And I understand. But I think this is one where I think the line is crossed. And we were before this court in 2004, I believe, and, you know, we raised that issue then. But it seems that after, you know, another nine years of litigation, we've made a lot of progress in the benefit side. But the singular issue, the thing that really, that took this man out of combat and sent him home, the thing that limited his vocational opportunities all his life, the very thing that Congress creates these benefits for was the one thing that he couldn't really get on with. Let me just make sure I understand the position there that you think this court should be in and should take. You say that we should look at the finding. And if the finding seems to be so egregiously incorrect, then we have a constitutional question? It seems to me that the unwillingness or inability of the system over this 60 years to get this right, it seems to me at some point in time, you know, forbearance ceases to be a virtue. So I think we're there. It just seems to me that Mr. Henderson is still alive. I called on Saturday and he's still struggling on his deathbed. But do we want to tolerate this kind of thing in the future? I'll reserve some time. Thank you. All right. Let's hear from the government. Mr. Breskin. May it please the Court. Mr. Henderson raises two principal arguments in his brief. The first is whether the Veterans Court failed to require the Board to state its reasons and bases as the Court's questions indicate that the Court understands that question is beyond this Court's jurisdiction to review because it's an application of 7104D to the facts of the case. The second issue raised is the due process claim. In our brief, we raised the collateral estoppel issue, which Your Honor mentioned. The reason that that's an important issue is because, as the Court recognized, Mr. Henderson sought compensation for his right hand burn three times, 1960, 1971, 1974. He then brought a cue motion on those decisions, which the Veterans Court decided, and he appealed to this Court, which dismissed for jurisdiction. He has had any number of reviews of the compensation for his service-connected burn injury, and that question has been put to rest. The disability question before the Court now is whether or not he has vascular, neurologic, or orthopedic disability secondary to that burn injury. As we note in our brief, he went to the regional office, which denied his claim. He was reviewed by the Board, and the Veterans Court reviewed that. The Board made lengthy findings of fact as to whether or not the disability that he was claimed existed and whether it was connected to the burn injury. It made factual determinations, which this Court can't review, saying that there was no connection between any secondary injury and the burn injury and denied his claim. The due process allegation really stems from the 50 years of frustration that Mr. Henderson has felt, which we understand his belief that his third-degree burn should have been compensated along the way. However, that question has been answered repeatedly by the Board, by the Veterans Court, and then by this Court. Unless the Court has any questions. In other words, you're saying he's in an unfortunate situation, but it's beyond the power of this Court to remedy? Well, no. I mean, so the medical evidence shows that he has both second- and third-degree burns, and so the characterization of there being this great miscarriage of justice, I would say, is a little off-base. In other words, you're saying it's collateral estoppel. The issue he's bringing to us is the same as has been adjudicated, except it has a new label, due process? Correct. And in reality, the question framed by the Board here with respect to the disability actually at issue, this vascular orthopedic and neurologic disorder secondary to the burn injury, the question framed was not based on the severity of the burn. It was simply whether or not he had these disabilities and whether they were service-connected to the burn injury of his right hand. And so the question presented, really presented by this appeal, is whether or not that decision was correct. The severity of his burn really didn't play a factor in the determination of whether or not these secondary disorders were service-connected to his burn injury. We do have jurisdiction over application of law to fact if there's a genuine constitutional claim, don't we? Under Cushman, yes. Under the statute. Under the statute, but I think in analogizing the case to Cushman, Mr. Henderson sets forth their view of what the actual genuine due process claim is here. But then I believe in answering your questions, he identified our position, which is that there is a fundamental difference here, which is that in Cushman, the court viewed the evidence as having been altered. Here, the evidence has not been altered. The evidence was before the Boards and the VA the entire time. Which brings us back to collateral estoppel again. Correct. Correct. It is our position that even though he has a firm belief that the mischaracterization of his burn injury should have resulted in a change, he has brought that to the Board several times. He has brought his Q claim. It has been reviewed, and it has been finally decided. I think that it's a generally undisputed medical fact that for some kinds of injuries, the manifestations become worse as one gets older. And this is the Korean War. So why is it not an era of law to continue to apply the adjudication as to whether it was a second or third degree burn and the consequences? That were made years ago without giving it a fresh look. Isn't that more a question of procedural law, not finding a fact? Well, it is in the context of the Q claim, which is the claim that was brought in the 2002 timeframe. No, I was taking it out of the context of the Q claim. It may not have been era 30 or 40 years ago to say that it doesn't matter whether you call it second or third degree because you are not disabled as completely as you might be. That was quite a while ago. And this is my question. Isn't it at least a question of, and maybe it is a due process issue, after so many years have passed, to say, well, we decided this 30 years ago, go away. Well, except that in making its decision, the board goes back and reviews the medical evidence leading up to its determination, and it looks at the current medical report. Precisely, why isn't that an error to decide today's claim on the evidence that was produced 30 years ago? Well, it's decided on all of the evidence of record, and the determination of, for instance, if the severity of the burn was the determining factor, the contemporaneous evidence that was developed at the time of the burn is most likely to be the most correct evidence of the severity of the burn. You're not answering my question. My question is why a decision made today as to the situation that this veteran finds himself in because of what happened in the Korean War. Why that should be based on the evidence that was produced 60 years ago. I think if you're going to make a determination of service connection, I'm not sure I understand how you can divorce the determination today as to whether or not the injury is connected to service from the medical records that existed at the time in service. Because then you'd simply be relying on a medical opinion maybe 40 or 50 years separated from the incident. I started my question by pointing out that it's known that injuries and disabilities can, from time to time, become manifested in the elderly that are not manifested in earlier times when you have more muscle tone or whatever it is. The determination here and in his previous claims wasn't simply that at the time of his burn he didn't have a convencible injury or at the time of his burn he didn't have these secondary vascular neuropathic or neurologic or orthopedic injuries. It was that as of now he doesn't have a compensable disability connected to the burn that he received. So the review... It wouldn't do to what happened in Korea? Why doesn't it? Excuse me? I'm sorry, I didn't hear that. If his present situation is a consequence of what happened in the Korean War, then why isn't it compensable? Today, even if it wasn't compensable when he was a young man. If the VA were to agree that his situation now was as a result of the Korean War, then it would be compensable. But isn't it error then and perhaps even a due process error for the VA to decline to answer that question? But the VA hasn't declined to answer that question in this case. The VA has repeatedly gone back to look at whether or not first he had a compensable burn injury alone and now it has gone back to look at whether or not he has a compensable secondary disorders related to that burn injury. So they haven't refused at all to go back to look at it. All we're saying on the collateral estoppel is that the VA has already gone back. If he wanted to bring a new claim for disability compensation and bring forth new and material evidence, he is free to do so. But all he's doing here is simply raising the issues that have already been decided by the Veterans Court and that was appealed to this court and was dismissed. That's the basis for the compensation. It's pretty fishy, isn't it, for the VA to say you have to bring a new claim, which means that you can't bring the injury back to the time of service even though that's when you were injured. Well, I mean... If he files a new claim, even if the service connection is granted, he's not entitled to compensation before he files the claim. But the procedures are set up to allow him to bring, for example, the Q motion, which would bring it back to the time of the original decision. So I'm not sure I understand where the procedural due process claim would lie in the fact that he can bring a new claim for disability compensation for this burn as he has already brought three times in which he has challenged with his Q claim and appealed to this court. Any more questions? Any more questions? Okay. Thank you, Mr. Breskin. If it pleases the Court. Well, precisely in 1960 when they rated this hand, they rated it as a second-degree burn. The third-degree burn records, the military and hospital records from Japan were in the record at that time. Couldn't he have appealed it then? A second-degree burn of that size was non-compensable under the regulations as they stood in those days. So essentially they had given him a non-compensable rating. When he reopened later on in 1978, they did surgery. They did ulnar transposition surgery on this man and made his hand objectively worsen because they caused more harm than they solved. He didn't have carpal tunnel. He had a bad hand, so he didn't have repetitive motion injury. He couldn't use his hand. It was very weak. So what we did is we reframed the issue here. When we talk about neurological, vascular, and muscle injury secondary to the burn, that's by way of reframing it. We're trying to get it over here into the world of full-thickness burns because they keep sending out, over these decades, inquiries for examination that say, review the second-degree burn of this veteran. And so they do an exam on it, and they hint, hint, wink, nod, examine his second-degree burn. And so they say, oh, we did, and it's still a second-degree burn. And so we have one of their wonderful exams in 1993, which got him the 10% compensation on the scar, said this man needs to see a hand expert. It's right in the CMP. He needs to be referred to a hand and plastic surgery specialist. And when I came into the case, we found Dr. Rind, a former Air Force doctor. We found Dr. Gomez, who was our burn specialist. And Dr. Gomez got into burns because he handled the fellas off the forestall when John McCain's ordinance went off. That's how he got involved in burns, standing on his feet for 96 straight hours, saving the lives of those young men. And so he devoted his life to burns. He looked at this case, and he was just appalled. So he wrote, I think, a very good decision, which then the board pushed aside, and it's not relevant, and who's this guy, and why should we care? And so in the end here, I think Mr. Henderson has the better of it. He's been right. He's not going to get compensated. He joins his brothers and sisters on that side of the line. There's millions of them. But it won't make it right. And whether or not this court can craft a remedy for this family, I don't know. But I think this rises to the level of due process. And exactly, there was an objective worsening of this situation after the 78 surgery. He then goes in, and there's all the – in 2005, he's going through physical therapy. There's a machine where you check your grip strength, the JMR machine. It's the standard machine, the gold standard in the health care and rehab industry. Dr. Rind gave him the JMR machine test in 2001, 1951-2001. It took 50 years to get an objective strength test to this man's right hand. I don't know what it was like before that because they never sent him through the physical therapy, and they never did any objective testing. They rejected him out of hand. And as I said, whether there was a racial component in that, I can tell you by the time Vietnam came along, the 60s, that was all gone. You know, whatever your ethnic origin or your race or your gender, Detroit was treating us all equally bad. So I thank you very much. Thank the court for its time. Okay, thank you, Mr. Walsh and Mr. Breskin.